**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

GREENWAY AUTOMOTIVE, INC., a corporation;

GREENWAY AUTOMOTIVE MANAGEMENT, LLC, a limited liability company;

JACKSONVILLE PHILLIPS HWY AUTO ACQUISITIONS, INC., a corporation d/b/a Greenway Kia at the Avenues;

LONGWOOD AUTO ACQUISITIONS I, INC., a corporation d/b/a Greenway Kia North;

SEMORAN AUTO ACQUISITIONS, INC., a corporation d/b/a Greenway Kia East;

WEST COLONIAL AUTO, INC., a corporation d/b/a Greenway Kia West; and

WEST COLONIAL HYUNDAI, INC., a corporation d/b/a Greenway Hyundai Orlando,

Defendants.

**Case No. 6:26-cv-2337**

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges:

1. The FTC brings this action for Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Defendants' violations relate to deceptive practices in the advertising, marketing, promotion, offering for sale, lease or financing, and sale, lease, or financing of motor vehicles. Defendants systematically deceive consumers shopping for motor vehicles by advertising vehicles for thousands of dollars less than the actual price Defendants charge. For these violations, the FTC seeks relief, including a permanent injunction and other relief, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).

**SUMMARY OF THE CASE**

2. Defendants mislead consumers into visiting their dealerships by advertising their vehicles online at artificially low prices. When consumers attempt to purchase the vehicles they have seen in these online listings, Defendants refuse to honor their advertised prices. Instead, Defendants systematically inflate the prices by (i) adding thousands of dollars of dealer-imposed fees, (ii) claiming advertised prices reflect conditional rebates and discounts only available to a subset of consumers, and requiring other consumers to pay more, (iii) charging for mandatory add-on packages

Defendants claim cannot be removed, (iv) inflating charges the government requires consumers to pay, such as title, license, and registration, and (v) simply increasing prices without explanation. As a result of these unlawful practices, Defendants overcharge consumers *in over 92% of transactions, on average by more than $3,350 over the advertised price.*

3. To conceal their unexpected price increases, in many cases, Defendants refuse to provide consumers with copies of their paperwork until after the transaction has been completed, and, in some cases, not even then. In other cases, when consumers become fed up with Defendants and seek to leave, Defendants keep them at the dealership by withholding the keys to consumers' trade-in vehicles, failing to complete needed paperwork, or refusing to return consumers' deposits or downpayments.

4. Defendants also lure consumers with mailers falsely representing that consumers have won pictured prizes, which must be collected at a Greenway dealership location. But when consumers arrive at the dealership, they discover the prizes shown on the mailer are not real, and instead just another ploy to get them in the door so that Defendants can sell them cars.

5. Defendants continued their unlawful practices even after receiving a warning letter from the FTC in March 2026 concerning Greenway's advertising practices.

6. Defendants have deceptively advertised false prices and hidden the actual price to purchase their vehicles by misrepresenting advertised prices, in violation of Section 5 of the FTC Act.

7. A central effect of Defendants' deceptive pricing practices is that by advertising prices that are lower than they actually are, Defendants are harming consumers and competition. By obscuring the total price—through hidden dealer-imposed fees, mandatory add-ons, inflated government charges, and other hidden charges—Defendants prevent consumers from readily determining and comparing the actual price of purchasing one of Defendants' vehicles versus the price offered by competing dealers. Defendants' conduct distorts the competitive process by impeding consumers' ability to make informed choices. Through these deceptive practices, Defendants unlawfully take advantage of consumers and competitors alike.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2), and 15 U.S.C. § 53(b).

## PLAINTIFF

10. The FTC is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court

civil action by its own attorneys. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

**DEFENDANTS**

11. Defendant Greenway Automotive Inc. ("Greenway Automotive") is a Florida corporation with its principal place of business at 9001 E. Colonial Drive, Orlando, FL 32817. Greenway Automotive operates under the unregistered fictitious name Greenway Automotive Group. Greenway Automotive provides operational services and support to the Defendant dealerships, including employee hiring, payroll, and IT services. Greenway Automotive pays to register websites that each of the Defendant dealerships use to advertise their vehicles. Greenway Automotive has also responded to complaints about dealerships, including those conveyed by the Florida Department of Highway Safety and Motor Vehicles. Greenway Automotive transacts or has transacted business in this District.

12. Defendant Greenway Automotive Management, LLC ("Greenway Automotive Management") is a Florida limited liability company with its principal place of business at 9001 E. Colonial Drive, Orlando, FL 32817. Greenway Automotive Management provides operational services and support to the Defendant dealerships, including accounting; processing vehicle tags, titling, and registration; and inventory management. Greenway

Automotive Management has also responded to complaints about dealerships conveyed by the Florida Department of Highway Safety and Motor Vehicles. Greenway Automotive Management transacts or has transacted business in this District.

13. Defendant Jacksonville Phillips Hwy Auto Acquisitions, Inc., also doing business as Greenway Kia at the Avenues ("Greenway Kia at the Avenues"), is a Florida corporation located at 10564 Philips Highway, Jacksonville, Florida 32256, listing its principal place of business at 9001 E. Colonial Drive, Orlando, FL 32817. Greenway Kia at the Avenues transacts or has transacted business in this District.

14. Defendant Longwood Auto Acquisitions I, Inc., also doing business as Greenway Kia North ("Greenway Kia North"), is a Florida corporation located at 615 N. US Highway 17-92, Longwood, FL 32750, listing its principal place of business at 9001 E. Colonial Drive, Orlando, FL 32817. Greenway Kia North transacts or has transacted business in this District.

15. Defendant Semoran Auto Acquisitions, Inc., also doing business as Greenway Kia East ("Greenway Kia East"), is a Florida corporation located at 8701 E. Colonial Drive, Orlando, Florida 32817, listing its principal place of business at 9001 E. Colonial Drive, Orlando, FL 32817. Greenway Kia East transacts or has transacted business in this District.

16. Defendant West Colonial Auto, Inc., also doing business as Greenway Kia West ("Greenway Kia West"), is a Florida corporation located at 3407 W. Colonial Drive, Orlando, Florida 32808, listing its principal place of business at 9001 E. Colonial Drive, Orlando, FL 32817. Greenway Kia West transacts or has transacted business in this District.

17. Defendant West Colonial Hyundai, Inc., also doing business as Greenway Hyundai Orlando ("Greenway Hyundai Orlando"), is a Florida corporation located at 4110 W. Colonial Drive, Orlando, FL 32808, listing its principal place of business at 9001 E. Colonial Drive, Orlando, FL 32817. Greenway Hyundai Orlando transacts or has transacted business in this District.

**COMMON ENTERPRISE**

18. Defendants Greenway Automotive, Greenway Automotive Management, Greenway Kia at the Avenues, Greenway Kia North, Greenway Kia East, Greenway Kia West, and Greenway Hyundai Orlando (collectively, "Defendants" or "Greenway") have operated as a common enterprise while engaging in the deceptive acts and practices alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, employees, business functions, customer service representatives, advertising, IT services,

and office locations. Because Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

## COMMERCE

19. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

20. Defendants are a dealership group operating 35+ automobile dealerships, collectively doing business as the "Greenway Auto Group."

21. Greenway Auto Group operates a website that promotes its numerous dealership locations, and advertises the new and used vehicles at each dealership. The website refers to the vehicles at its dealerships as "our online inventory," the consumers who visit those dealerships as "our loyal customers," and the employees at the dealerships as "our sales associates," "our finance team," and "[o]ur team." The Greenway Auto Group website further directs consumers to websites for each of its dealership locations, which also advertise new and used vehicles.

### A. Greenway's Deceptive Price Advertising

22. Defendants lure consumers to their dealerships by advertising low prices for specific motor vehicles on their websites and third-party websites.

23. In online advertisements, Defendants represent that specific vehicles are available for purchase at specific prices.

24. On their websites, Defendants advertise the "GREENWAY PRICE" or "GREENWAY SALES PRICE" in large, capitalized text, as in the following listing:




25. Where Defendants' websites include more than one dollar figure, the "Greenway Price" is the largest and most prominent, often displayed in bright green text, as follows:




For vehicles Defendants advertise on third-party websites, such as CarGurus and Cars.com, typically only one price is displayed, as in the following:



26. The prices advertised in Defendants' online vehicle listings are not the actual prices. The actual prices Defendants charge consumers to purchase the advertised vehicles are thousands of dollars more.

27. An analysis of Greenway's transactions at the Defendant Kia dealerships from March 1, 2023, through May 6, 2026, shows that, of the vehicles Greenway advertised on third-party sites CarGurus.com and Cars.com, *over 92% of consumers* were charged more than the advertised price. And those consumers paid an average of *at least $3,354 more* (not including any required government charges, such as tax, title, and registration, or optional add-ons). In fact, this figure underestimates the full extent of Defendants' price inflation because it subtracts conditional rebates some consumers received, like rebates for servicemembers. Consumers who receive conditional rebates, however, should pay even less than the price advertised to all consumers. Thus, servicemembers and other consumers who receive conditional rebates end up paying even more than they should have, due to the deceptive advertising.

28. Defendants use a variety of tactics to charge consumers substantially more than advertised.

### i. Defendants Inflate the Price by Imposing a Variety of Fees

29. One tactic frequently employed by Defendants to inflate the price is to pile on thousands of dollars in various fees. These fees do not cover required government charges like tax, title, license, tag, and registration, which must be paid on top of the price at Greenway, but are simply imposed and retained by the dealer (hereinafter "dealer-imposed fees"). Defendants use a variety of names for the array of dealer-imposed fees they charge, including but not limited to, "Admin fee"; "Dealer fee," "delivery fee," or "Dealer Pre-Delivery Service" charge; "PTA fee," "Private Tag Agency Fee," "document" fee, or electronic registration filing fee; "recon" or "reconditioning" fee; "inspection" fee; "CPO" or "certification" fee; and "loyalty" fee.

30. For example, in the advertisement on Greenway Kia North's website shown below, Greenway represented that consumers could purchase a used 2017 Honda CR-V EX-L for the "Greenway Price" of $18,800:




31. However, when a couple who had viewed that very listing traveled over an hour to Greenway Kia North to purchase the advertised vehicle, the sales associate handed them the price sheet below, revealing that the dealership was actually charging $23,539.85 to purchase the car. The dealership had *added $4,739.85 in dealer-imposed fees*, including a $2,495.00 "recon" fee, a $995 "loyalty" fee, a $249.95 "Admin Fee," a $899.95 "Dealer Fee," and a $99.95 "PTA Fee"—increasing the advertised price by over 25%.



Customer Name ______________________

| | |
|---|---|
| Market Selling Price | $18,800.00 |
| Discounts | $0.00 |
| Rebates | $0.00 |
| Adjusted Price | $18,800.00 |
| recon | $2,495.00 |
| loyalty | $995.00 |
| Total Purchase Price | $22,290.00 |
| Trade Allowance | $0.00 |
| Trade Difference | $22,290.00 |
| Admin Fee | $249.95 |
| Dealer Fee | $899.95 |
| PTA Fee | $99.95 |
| Sales Tax (6.5%) | $1,523.59 |
| License Fee | $400.00 |
| Trade Pay Off | $0.00 |
| Balance | $25,463.44 |

Cash Do

| Term |
|---|
| 60 |
| 72 |
| 75 |

* A.P.R. Subject

Valuing your Trade

| | |
|---|---|
| Actual Value | $0.00 |
| Tax Savings | $0.00 |
| Relative Allowance | $0.00 |

32. When the couple challenged these fees, a manager told them they were non-negotiable. He said the "recon" fee covered vehicle reconditioning that he claimed had already been performed—notwithstanding that it was obvious that the vehicle had not even been cleaned; there were still toys under the seat. And the couple was informed the "loyalty" fee was charged to anyone who has not previously purchased a vehicle from that dealership location.

33. After the couple confronted Defendants about Greenway's price advertisements for this vehicle, both at the dealership and in a negative online review to which the General Manager responded, Defendants proceeded to *lower* the online price advertised for this same vehicle.

Defendants ultimately sold the same vehicle to another customer for almost $4,000 more than the advertised price (then listed at $18,422).

*a) Dealer Fee, Administrative Fee, Processing Fee*

34. The fees imposed by Defendants include a set of three fees—often referred to as the "Dealer Fee," "Administrative Fee," and "PTA Fee"—that Defendants charge to virtually every consumer simply to complete the transaction.[1] Between March 1, 2023, and May 6, 2026, the Defendant Kia dealerships charged all three of these fees to *over 99% of consumers*. Yet Defendants did not include any of these mandatory fees in the advertised prices.

35. To the extent these fees were mentioned at all on Defendants' websites, the references were buried at the very bottom of the page in dense fine print that was itself deceptive. For example, a consumer viewing a listing on Greenway Kia North's website would have to scroll down past multiple screens of unrelated content—including advertisements for "Other Vehicles You May Like"—before coming across the following set of confusing, barely legible statements presented in small, unbolded typeface:

[1] Defendants use various names to refer to this set of fees, including delivery fee, document processing fee, documentation fee, and electronic registration filing fee.

**Disclaimer:**

*The advertised price does not include state and local taxes, tags, registration fees, title fees, a $189.95 PTA Fee, a $1,199.95 Dealer Fee, and a $399.50 Administration Fee. These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale. The price also excludes any dealer-installed accessories or dealer-provided benefits. We strive to update our inventory regularly, but there may be a delay between the sale of a vehicle and inventory updates. Prices, specifications, and availability are subject to change without notice. Pricing includes all applicable manufacturer incentives and may not be combined with other exclusive offers. All advertised prices are for in-stock units only and include all applicable dealer and manufacturer discounts and incentives. Some offers and incentives require financing through the Manufacturer Captive Lender and are subject to approved credit. Please contact the dealer for the most current information and details. While every reasonable effort has been made to ensure the accuracy of this information, the dealership is not responsible for errors or omissions on this site. To receive any special or advertised pricing, a copy of the advertisement must be presented at the time of purchase. Due to supply chain challenges and limited inventory, vehicles may be subject to an additional market adjustment depending on inventory production, availability, and market conditions. Prior sales are excluded. See dealer for complete details.*

36. On the rare occasion consumers notice—let alone read—the fine-print text, the text itself is misleading. It lists Defendants' dealer-imposed fees with required government charges, such as "taxes, tags, registration fees, and title fees," obscuring the fact that the bulk of the increased cost results from Defendants' own charges. Moreover, it suggests consumers will pay *less* than they really will. Of the 92% of Greenway consumers who are charged more than the advertised price, they pay on average *$3,354 more* than advertised. Thus, the $1,789.40 in fees itemized in this disclaimer are only a portion of the fees and markups Defendants routinely charge, as further detailed below.

*b) Reconditioning Fee*

37. On top of the three fees above, Defendants routinely add thousands of dollars in so-called "reconditioning" fees to their used vehicles. Defendants tell consumers these fees are non-negotiable charges that cover the dealership's prior reconditioning of the car.

38. Defendants do not include reconditioning fees in the advertised price and often fail to disclose these fees anywhere in their online listings.

39. Defendants routinely charge consumers reconditioning fees of $2,500 or more, radically increasing the price of used vehicles.

40. Consumers have complained to Defendants that the prices in their advertisements are deceptive because they do not include reconditioning fees that the dealership tells consumers are mandatory when they seek to purchase vehicles they have seen advertised.

41. For instance, one consumer viewed the following 2023 Kia Sportage listed online at Greenway Kia North for $15,444:



42. Because the consumer was located in Birmingham, Alabama—an 8 hour drive from the dealership—she contacted Greenway to determine whether it was worth making the trek. When the dealership eventually provided the price sheet shown below, the consumer discovered that Greenway was charging *$5,245 more than the advertised price*—purportedly due to the addition of a previously undisclosed $3,995 "recon" fee, a $249.95 administrative fee, and $999.90 in other unspecified dealer-imposed fees labeled "Taxable Fees (Estimated)":



Stock # : PG061362 New / Used : Used VIN : 5XYK33AF6PG061362
Vehicle : 2023 KIA Sportage Mileage: 88126
Type : EX (A8) 4dr Front-Wheel Drive Color : GREY

Loan Payments — Estimated

| Cash Down | 1,000 | 2,000 | 3,000 |
|---|---|---|---|
| 60 Months | 552 | 525 | 498 |
| 66 Months | 519 | 494 | 469 |
| 72 Months | 492 | 468 | 444 |

* A.P.R. Subject to equity and credit requirements.

| | |
|---|---|
| Market Value Selling Price | 15,444.00 |
| recon | 3,995.00 |
| Total Purchase | 19,439.00 |
| Taxable Fees (Estimated) | 999.90 |
| Administration Fee | 249.95 |
| Tax | 775.83 |
| Non Tax Fees | 172.45 |
| Balance | 21,637.13 |

mer Approval: Management Approval:
ning this authorization form, you certify that the above personal information is correct and accurate, and authorize the release of credit and employment
ation. By signing above, I provide to the dealership and its affiliates consent to communicate with me about my vehicle or any future vehicles using electronic,
and written communications including but not limited to eMail, text messaging, SMS, phone calls and direct mail. Terms and Conditions subject to credit approval.
ormation Only. This is not an offer or contract for sale.

43. The consumer closely reviewed the vehicle listing on Greenway's website and the third-party website shown above to confirm the advertisements did not disclose these fees. However, when she complained to multiple Greenway employees about Greenway's failure to honor its advertised price, she was repeatedly told, including by the sales manager, that the dealership would not remove the reconditioning fees and was

unwilling to sell the car for less than $4,000 over the advertised price.

44. Defendants sold this same vehicle a few weeks later to another consumer for over *$6,500 above the advertised price.*

45. Defendants similarly add thousands of dollars in “inspection” and “CPO” or “certification” fees to used vehicles, which they claim are mandatory, but are not included in the advertised price.

*c) Conditional Pricing & Loyalty Fee*

46. Additionally, in many instances, Defendants refuse to honor the price advertised in their online listings by claiming that consumers must qualify for conditional rebates or discounts to obtain that price. They charge consumers who do not satisfy these undisclosed conditions a higher price.

47. For example, the Defendant Kia dealerships regularly raise the price for all but their repeat customers by charging a “loyalty” fee of approximately $995 on top of the advertised price. When consumers seek to purchase vehicles at the advertised price, Defendants tell them that the online price assumes a special loyalty discount only available to consumers who have previously purchased a car from that dealership; all other consumers must pay more than advertised.

48. Defendants hide this loyalty fee. It is not even mentioned with the other fees in Defendants’ fine print disclaimer. Instead, in the limited advertisements where “loyalty” is mentioned at all, the reference is

inexplicably buried in the dense "Description," in language that is itself misleading. For instance, in the middle of this text, Defendants conceal a passing reference to a "Loyalty Discount" that merely assures consumers "[t]he Internet Price includes a $995 discount thanks to the Greenway Kia West Owner Loyalty program"—without informing consumers what the Loyalty Discount is, that they must qualify, the conditions for qualification, or even that limitations apply that could require them to pay *more* than advertised. To the contrary, Greenway's listings represent that the prominently displayed "Greenway Price" is not dependent on "Conditional" offers, which are listed separately. The following is another example of how Defendants have buried a passing reference to a loyalty discount in the middle of a vehicle listing, outside the view of the advertised price:




Other advertisements say even less—or nothing at all—about the loyalty penalty.

49. For example, one consumer complained Greenway Kia West had advertised a Dodge Ram for thousands of dollars less than the actual price. Despite advertising the vehicle for $51,392, in the following price sheet, the dealership claimed the consumer did not qualify for a $995 “Greenway Kia West Loyalty” discount, on top of which it tacked on thousands of dollars in

fees, including a $1,595 “inspection” fee, a $899.95 “Dealer Fee,” a $249.95 “Administrative Fee,” and a $99.95 “PTA Fee.”

**VEHICLE**

Stock # : PN621605 New / Used : **Used** VIN : 1C6SRFHT8PN621605 Mileage: 23058

Vehicle : 2023 RAM 1500 Color : Billet Silver M

Type : Limited 4x4 Crew Cab 144.5 in. WB

| Loan Payments | Estimated | | |
|---|---|---|---|
| Cash Down | 3,500.00 | 4,500.00 | 5,500.00 |
| 60 Months / 11 * | 1250.58 | 1228.66 | 1206.75 |
| 66 Months / 11 * | 1165.40 | 1144.98 | 1124.55 |
| 72 Months / 11 * | 1094.80 | 1075.62 | 1056.43 |

* A.P.R. Subject to equity and credit requirements.

Type Comments Here:

| | |
|---|---|
| Market Value Selling Price | 51,392.00 |
| DNQ Greenway Kia West Loyalty | 995.00 |
| inspection | 1,595.00 |
| Total Purchase | 53,982.00 |
| Administration Fee | 249.95 |
| Dealer Fee | 899.95 |
| PTA Fee | 99.95 |
| Tax | 4,901.83 |
| License Fee | 425.00 |
| Doc Stamps | 200.55 |
| Balance | 60,759.23 |

50. After that consumer posted a negative review concerning the transaction, Defendants proceeded to charge another customer $54,135.99 to purchase that same vehicle, which was then advertised for $51,885. To achieve this $2,250.99 price discrepancy over the advertised price, Defendants marked up the so-called “Cash Price” by over $1,000 and then tacked on the $249.95 “Administration Fee,” $899.95 “Dealer Fee,” and $99.95 “PTA Fee.”

51. The loyalty penalty is not the only undisclosed condition that Defendants invoke in an attempt to justify their refusal to honor the advertised price to consumers.

52. In other instances, Defendants have refused to sell vehicles at the prices advertised online by claiming the advertised price assumes special

discounts or rebates only available to consumers who finance through the dealership. Consumers who pay cash or use outside financing must pay a higher price.

### ii. Defendants Raise the Price with Mandatory Add-ons

53. The prices Defendants prominently advertise online are also false because they do not include mandatory charges for add-on packages that Defendants tell consumers are required with their vehicle purchase.

54. For example, Greenway Kia North, Greenway Kia West, and Greenway Kia East systematically charge consumers an extra $2,295 or more for a mandatory package of dealer-provided add-ons that they require consumers to purchase on all new vehicles, often referred to as the "Greenway Kia Value Package" or "Greenway Advantage Package."

55. This mandatory charge is not included in the Greenway price despite for years being "required" and "Included with Every New Vehicle We Sell."

56. Defendants admitted as much on an entirely different webpage in a corner of Defendants' website. Only if consumers reach that separate page, scroll down multiple screens to the bottom, and click to expand the answers to individual questions, can they see Defendants respond to the question "Is the [Greenway Advantage] package included with every new vehicle?" as follows: "Yes. Every new vehicle we sell comes pre-equipped with this

package as part of our elevated ownership experience." Defendants similarly respond to the FAQ "Is this [Greenway Advantage] package required?" as follows: "Yes. Each of these items is installed upon the vehicle's arrival at our dealership and individually assigned. As a result, the package is permanently associated with the vehicle and cannot be removed."

57. Despite being a required upcharge that Defendants claim is preloaded on all new vehicles before the consumer arrives, Defendants do not include this charge in the advertised price.

58. To the contrary, where Defendants reference charges for the "Greenway Kia Value Package" in their online listings, they misleadingly suggest that the package is optional because it is not listed as part of the price, but rather among the "conditional" offers, which include discount offers. As shown in the following pop-up, which consumers see if they click on "Details" when visiting the Greenway Kia West website, consumers are shown a Greenway Price that does not include the mandatory package, followed by a series of "Conditional Kia Offers," which includes conditional discounts, like military incentives and financing offers, and then the "Greenway Kia Value Package":




59. The only other allusion to the Greenway Kia Value Package is a cursory reference to something called "Greenway Advantage & Protection Benefits" buried several screens down from the price, in the middle of a dense "Description," in small, unbolded text that itself fails to inform consumers that the charge is mandatory and appears only after a promise of "transparent pricing":

Description

$2,815 off MSRP! Priced below KBB Fair Purchase Price! 2025 Kia Soul LX Kdt We Wanna See Ya in a Kia!

At Greenway Kia North, we make it easy to drive the car you love with transparent pricing, competitive financing, and a no-pressure experience designed to make your purchase simple and enjoyable.

Have questions? Our team is ready to help you drive it home today! Right now, we're taking reservations and helping customers lock in limited-time offers before they're gone.

Greenway Price excludes tax, tag, title, registration, dealer fees, and Greenway Advantage & Protection Benefits for $2,295.95. See dealer for details..

Having a Kia Warranty means you not only get the reassurance of up to a 10yr/100,000 mile limited powertrain warranty, 5yr/60,000 mile bumper to bumper, 24/7 roadside assistance, trip-interruption services, and rental car benefits ** Visit GreenwayKiaNorth.com ** Or call and ask for an Internet Manager to check availability and additional options - 625 N. US Hwy 17-92, Longwood, FL 32750 The online price may include financing offers through Kia Finance America (KFA) and are subject to credit approval. Only a limited number of customers may qualify for advertised programs. Offers are contingent upon vehicle availability and participating dealer inventory, which may be limited. Promotions are valid for a limited time and may not be combined unless specified. Delivery must occur from a participating dealer by the designated deadline. **Price includes: $1000 - Kia Customer Cash. Exp. 03/31/2026**

60. In fact, this self-contradictory paragraph begins by doubling down on the inaccurate Greenway price prominently advertised at the top of the listing. The first line of the fine-print touts "$2,815 off MSRP," which is the difference between the MSRP of $22,690, and the advertised "Greenway Price" of $19,875—a price without the mandatory Greenway Advantage package and other dealer-imposed fees the consumer must pay.

61. Similarly, Greenway Hyundai Orlando requires consumers to pay thousands of dollars on top of the advertised price for mandatory dealer packages, including a Greenway Hyundai accessory package and a Luxcare package, that Defendants automatically add to consumers' deals and refuse to remove.

62. Defendants have received numerous complaints from consumers who recount that Defendants tacked on charges for mandatory packages that

Defendants told them could not be removed—including as recently as May 2026.

**iii. Additional Price Increases**

63. Defendants also increase the amount consumers must pay by overcharging them for government charges, such as license, title, and registration.

64. Defendants also fail to honor the prices in their online advertisements by charging more than the prices listed online without any explanation for the discrepancy.

* * *

65. Many consumers shopping for a motor vehicle view the low prices Greenway advertises and believe that Greenway will sell them the advertised vehicle for the advertised price.

66. Consumers frequently travel to Greenway dealerships because of their online prices—which in many cases are lower than the price offered by Greenway's competitors.

67. Consumers often do not discover the true price of Defendants' vehicles—if at all—until they have invested significant time visiting or communicating with Greenway dealerships.

68. Even when consumers call the dealership to confirm the advertised price, in many instances, Greenway employees falsely confirm the

price in their online listing to lure consumers to the dealership. For instance, one consumer who saw an advertisement on Greenway Kia North's website listing a 2024 Kia EV6 GT-Line for $45,556 contacted Defendants to confirm the price while simultaneously pursuing an offer for a similar vehicle in person at Greenway's competitor. Because Defendants promised to beat the competitor's price (as well as Greenway's own advertised price), she abandoned the competing transaction. However, when she arrived at Greenway Kia North, she was in fact charged approximately $9,000 more than advertised.

69. Many consumers fail to notice the price increase because, during the closing process, Defendants use a dealer-controlled electronic tablet to present consumers with numerous complex, highly technical documents, which consumers are rushed to electronically sign. For example, the consumer in paragraph 68 only discovered the price discrepancy after she returned home because Greenway executed the deal using a dealer-controlled tablet and refused the consumer's repeated requests for paper copies of the documents. Instead it provided a USB thumb drive which she could only open at home.

70. Defendants often fail to provide consumers with copies of their paperwork until well after the transaction has been completed, and, in some cases, not even then. Defendants frequently put the deal documents on a

thumb drive that consumers are not able to review until they get home. And the deal jackets Defendants do provide often lack copies of documents that itemize charges.

71. In those cases where consumers discover the price increase and seek to walk away, Defendants keep them at the dealership using a variety of stalling tactics, including withholding the consumers' keys to their own vehicles, refusing to return consumers' deposit or downpayment, and failing to complete paperwork needed by the consumers on unrelated transactions.

**B. <u>Defendants Lure Consumers with Prize Mailers</u>**

72. Defendants also lure consumers to Greenway dealerships by disseminating or causing to be disseminated advertising mailers with scratch-offs and combination boxes matching "Official Winning Codes," representing that consumers have won valuable prizes, such as $2,500. A copy of one such advertisement is shown below:




73. When consumers call the number listed on the flier, they are directed to the Greenway dealership location listed on the flier to collect their prize.

74. The prizes shown on these fliers are not real, but just another ploy to get consumers into the dealership where Defendants attempt to sell them cars.

75. Greenway has sent these prize mailers to Florida consumers to lure them to Greenway dealership locations, including Greenway Hyundai Orlando, as shown in the following mailer:







76. Many fliers include a scratch off, several "Official Winning Codes," and represent "How to win: If the code underneath your scratch-off matches one of the winning codes, you are a guaranteed winner!" Above each winning code is an arrow pointing to a prize, including $2,500 instant cash and a vehicle. Beneath these codes it states "All other codes – sorry, you are not a winner."

77. When consumers scratch where it says, "Scratch here!" the flier reveals a number that matches the official winning code pointing to $2,500 instant cash.

78. Consumers have attempted to collect the prize shown on the flier by presenting a flier with the winning numbers at the Greenway dealership to which the flier directs them. However, the consumers do not receive the prize advertised in the promotion.

79. One consumer reported that, after calling the number listed on the flyer to confirm its claim that she had won $2,500 and being directed to a

Greenway location indicated on the flier to collect her prize, the Greenway salesman laughed at her for crediting the flier and told her that Greenway does this kind of promotion all the time in different states.

80. The following is another mailer Defendants sent as recently as July 2026, directing consumers to Greenway Hyundai Orlando to collect the prizes shown:




C. <u>Defendants' Unlawful Advertising Practices Continue Following Receipt of the FTC's Warning Letter</u>

81. Defendants have long been aware that their price claims mislead consumers.

82. Since at least 2021, Defendants have routinely received and responded to complaints from consumers, the Better Business Bureau, and government entities about Greenway's false advertising, lack of price transparency, excessive fees, and mandatory add-ons.

83. On March 11, 2026, the FTC sent a warning letter to the Greenway Auto Group concerning their advertising practices. It stated that the FTC is committed to "ensuring that the price consumers see in advertising is the actual price they will pay (aside from required government charges, like taxes)," and that it is illegal to, among other things, "advertis[e] a price that does not reflect all required fees"; "advertis[e] a price that reflects rebates or discounts not available to all consumers"; "condition[] the advertised price on consumers using dealer financing"; and "requir[e] consumers to buy additional items not reflected in the advertised price."

84. Defendants continued their unlawful pricing practices after receiving the FTC's warning letter. Rather than eliminate the identified practices, Defendants added numerous false assurances of price transparency to their websites. For instance, Defendants updated their websites to say, "The price you see advertised online is the real price" and consumers "have a clear, honest number from the very first click."

85. In large, colored banners, Defendants' websites now tout a "GREENWAY ALL-IN PRICE" with "ZERO HIDDEN FEES," and expressly state this "Price Includes ALL Dealer Fees (+Tax/Tag)." The following is an example of how Defendants list their vehicles following receipt of the FTC's warning letter:


Greenway Kia North
GREENWAY ALL-IN PRICE.
Price Includes ALL Dealer Fees (+Tax/Tag)
ZERO HIDDEN FEES.
A+


NEW 2026 Kia Sportage X-Line
VIN: 5XYK6CDF2TG346427 STOCK: TG346427
Greenway Kia North
GREENWAY ALL-IN PRICE.
Price Includes ALL Dealer Fees (+Tax/Tag)
ZERO HIDDEN FEES.
MSRP $39,060
Greenway Savings -$2,344
Select VIN Summer Sticker Event Retail Bonus Cash -$750
Greenway Selling Price $35,966
Dealer Fee +$1,199
Admin Fee +$399
Private Tag Agency Fee +$188
GREENWAY SALE PRICE* $37,752
Plus State Tax, Title, and License.
Additional Savings You May Qualify For -$2,500
See Details for more info
Details
Chat Live




86. Defendants similarly revised the fine print disclaimers buried at the bottom of their listings to claim they advertise the actual price. According to the following revised language, the price advertised now includes all fees other than tax, title, registration, and other government-imposed charges; "includes all mandatory dealer installed equipment"; and does not reflect any "[c]onditional offers":

> Our transparent pricing includes all mandatory dealer-installed equipment and fees. Advertised prices exclude tax, title, registration, and other government-imposed charges. Optional products and services are not included and are available only at the customer's election. Conditional offers are listed separately from the advertised price and are subject to specific eligibility requirements; not all customers will qualify. These conditional offers are non-combinable and cannot be stacked unless otherwise explicitly stated. All vehicles are subject to prior sale. While we make every effort to ensure inventory availability and pricing accuracy, please verify all information with the dealership.

> Some vehicles may be located at other locations and may be available for transfer, subject to dealer approval. Images are for illustrative purposes only.

87. In reality, even after receiving the FTC's warning letter and adding these assurances of price transparency to the websites for each of the Defendant dealerships, Defendants continue to advertise vehicles for thousands less than the actual price, to tack on dealer-imposed fees, to tell consumers they must pay for mandatory add-on packages that are not included in the advertised price, and to claim that the prominent and unqualified "Greenway sale price" is premised on unavailable discounts and rebates.

88. For instance, as recently as May 28, 2026, a Greenway Kia North sales associate was asked about the 2026 Kia Sportage X-Line above, which was advertised online for the "Greenway Sale Price" of $37,752. According to the listing, that "all-in" price includes all dealer fees and does not assume "conditional offers," which are "listed separately." Yet when the sales associate was asked to provide a quote in writing to purchase the vehicle, the sales associate admitted that the actual "[c]ash price is a little higher" and sent a price sheet revealing that the true price of the vehicle (including dealer-imposed fees) was $39,854.40, or *$2,102 more than the advertised price.*






VEHICLE

| | | | |
|---|---|---|---|
| Stock # : TG346427 | New / Used : New | VIN : 5XYK6CDF2TG346427 | Mileage: 3203 |
| Vehicle : 2026 KIA Sportage | | Color : Wolf Gray | |
| Type : X-Line (A8) 4dr All-Wheel Drive | | 42452 | |

| | |
|---|---|
| Market Value Selling Price | 39,060.00 |
| Discount | 1,000.00 |
| Adjusted Price | 38,060.00 |
| Taxable Fees (Estimated) | 1,394.90 |
| Administration Fee | 399.50 |
| Tax | 2,466.26 |
| Non Tax Fees | 400.00 |
| Balance | 42,720.66 |

89. Since receiving the FTC's warning letter, Defendants have also continued to misrepresent the actual price of vehicles by omitting charges for

add-ons they continue to tell consumers are mandatory—despite assurances on their website that all mandatory add-ons are now included in the price.

90. For instance, following receipt of the FTC's warning letter, Defendants added assurances to their website disclaimer asserting that "Advertised prices . . . include all mandatory dealer-installed equipment and fees," and that the $2,295 Greenway Advantage Package, which is not included in the advertised price, is "completely optional":

> **Is the Greenway Advantage Package mandatory?**
>
> No. The Greenway Advantage Package is a completely optional premium protection suite offered at $2,295.00. It is designed to maximize the longevity, safety, and hygiene of your investment, but it is never required to purchase, lease, or finance a vehicle.

91. Despite these assurances, Defendants continue to tell consumers they must pay extra for mandatory dealer packages and other dealer-imposed fees if they wish to purchase the advertised vehicles. For example, one consumer who noticed Greenway's new boasts of transparency visited Greenway Kia North to look at a vehicle advertised online at $22,665, only to be quoted a price thousands of dollars more due to the addition of a $2,300 Greenway package the dealership told her could not be removed and $1,400 in additional dealer fees. When the consumer pulled up Defendants' website to show them the advertised claims of "no hidden fees" and "all dealer fees included," two separate salesmen told her they could not honor the advertised price.

* * *

92. Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission because, among other things:

- Defendants engaged in their unlawful acts and practices repeatedly over a period of more than 5 years.
- Defendants engaged in their unlawful acts and practices knowingly.
- Defendants earned significant revenues from participating in these unlawful acts and practices.
- Defendants continued their unlawful acts or practices despite knowledge of numerous complaints.
- After receiving a warning letter from the FTC concerning deceptive pricing practices, Defendants not only continued charging more than advertised but added additional deceptive representations to their websites.
- Defendants took active steps to conceal their unlawful practices from law enforcement by altering their website following receipt of the FTC's warning letter to make it appear as if they were advertising the actual price while deceptive

pricing practices actually persisted.

- Defendants remain in the automotive industry and maintain the means, ability, and incentive to continue their unlawful conduct.

## VIOLATIONS OF THE FTC ACT

93. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

94. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I: Misrepresentation Regarding Advertised Prices

95. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, lease, or financing, or sale, lease, or financing of motor vehicles, including through the means described in Paragraphs 22 through 71 and 81 through 91, Defendants represent, directly or indirectly, expressly or by implication, that Defendants will sell particular vehicles at specific prices.

96. In fact, in numerous instances in which Defendants have made the representations described in Paragraph 95, Defendants require consumers to pay more than the price advertised to purchase those vehicles. Defendants routinely fail to honor the advertised price and require

consumers to pay thousands of dollars for dealer-imposed fees and mandatory add-ons that are required to purchase the vehicle, but not included in the prominently advertised price.

97. Therefore, Defendants' representations as described in Paragraph 95 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count II: Misrepresentation That Consumers Have Won a Specific Prize**

98. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, lease, or financing, or sale, lease, or financing of motor vehicles, including through the means described in Paragraphs 72 through 80, Defendants represent, directly or indirectly, expressly or by implication, that consumers have won a specific prize shown on a mailer.

99. In fact, in numerous instances in which Defendants have made the representations described in Paragraph 98, consumers have not won the prize shown in the mailer.

100. Defendants' practices constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**CONSUMER INJURY**

101. Consumers are suffering, have suffered, and will continue to

suffer substantial injury as a result of Defendants' violations of the FTC Act. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, the FTC requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act;

B. Grant preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief; and

C. Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

Dated: October 8, 2026

*/s/ Julia E. Heald*

JULIA E. HEALD (Lead Counsel)
JAMIE D. BROOKS
Federal Trade Commission
600 Pennsylvania Avenue NW
Mail Stop 5K21
Washington, D.C. 20580
Phone: (202) 326-3589 (Heald)
Email: jheald@ftc.gov
Phone: (202) 621-3913 (Brooks)
Email: jbrooks4@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION